BENJAMIN B. WAGNER
United States Attorney
KAREN A. ESCOBAR
Assistant U.S. Attorney
2500 Tulare Street
Fresno, California 93721
Telephone: (559) 497-4000

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BOUNEPHENG SAVONGSY,<br><br>Defendant. | ) | 1:10CR462 LJO<br><br>MEMORANDUM OF PLEA AGREEMENT PURSUANT TO RULE 11(c)(1)(B) OF THE FEDERAL RULES OF <u>CRIMINAL PROCEDURE</u><br><br>Date: August 26, 2011<br>Time: 9:00 a.m.<br>Place: Courtroom Four<br>Honorable Lawrence J. O'Neill |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States, by and through BENJAMIN B. WAGNER, United States Attorney for the Eastern District of California, and KAREN A. ESCOBAR, Assistant United States Attorney, and the defendant, BOUNEPHENG SAVONGSY, and his attorney, YAN E. SHRAYBERMAN, have agreed as follows:

1. <u>Charges</u>.

(a) The defendant acknowledges that he has been charged in a single count Indictment as follows:

Conspiracy to Manufacture, to Distribute and to Possess with the Intent to Distribute Marijuana, in violation of 21 U.S.C. §§§ 841(a)(1), 841(b)(1)(A), and 846.

(b) The defendant further acknowledges that the Superseding Indictment contains a Forfeiture Allegation, which generally seeks the forfeiture of all property constituting, or derived from, proceeds obtained, directly of indirectly, as a result of the charged narcotics offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the charged drug crimes.

2. <u>Nature, Elements and Possible Defenses</u>.

The defendant has read the charge against him contained in the Indictment, and the charge has been fully explained to him by his attorney. Further, the defendant fully understands the nature and elements of the crime with which he has been charged, together with the possible defenses and has discussed them with his attorney.

3. <u>Agreements by the Defendant</u>.

(a) The defendant agrees that this plea agreement shall be filed with the Court and become a part of the record of this case.

(b) The defendant agrees to enter a plea of guilty to the essential elements of the sole count of the Indictment, which charges him with Conspiracy to Manufacture, to Distribute and to Possess with the Intent to Distribute Marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846.

(c) The defendant stipulates and agrees that the facts

set forth in the Factual Basis in paragraph 6 herein are accurate and that the drug quantity set forth in the Factual Basis is reasonably foreseeable and attributable to him.

(d) The defendant acknowledges that, should the Court fail to follow any or all of the Government's or defendant's sentencing recommendations, the defendant will not be allowed to withdraw his plea.

(e) The defendant agrees to pay a special assessment of $100.00.

(f) The defendant understands that the law gives him a right to appeal his conviction and sentence. The defendant waives any right to appeal his conviction and sentence and any right he may have to bring any other post-conviction attack on his conviction and sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction and sentence.

(g) The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

(h) The defendant acknowledges that, as a consequence of his guilty plea in this case he will become ineligible for (1) assistance under any State program funded under part A of title IV of the Social Security Act [42 U.S.C. § 601 et seq.], (2) ineligible for benefits under the food stamp program (as defined

in section 3h of the Food Stamp Act) [7 U.S.C. § 2012(h)] and (3) ineligible for any State program carried out under the Food Stamp Act of 1977 [7 U.S.C. § 2011 et seq.]; all pursuant to 21 U.S.C. § 862a. The defendant further acknowledges that as a consequence of his guilty plea in this case he may become permanently ineligible for any or all Federal benefits.

(i) The defendant agrees that if he fails in any way to fulfill completely all of the obligations under this plea agreement, the defendant will assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that defendant's statements pursuant to this agreement, or any leads derived therefrom, should be suppressed or are inadmissible.

(j) The defendant reserves the right to seek any other additional departures or reductions or variances pursuant to Booker or the Sentencing Guidelines.

(k) The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

(l) The defendant agrees not to contest the forfeiture of any property seized in this matter.

4. Agreements by the Government.

(a) The government agrees to recommend a three-level reduction in the computation of the defendant's offense level, provided that he makes a full and clear demonstration of acceptance of responsibility under U.S.S.G. § 3E1.1.

(b) The government agrees to recommend a sentence at the bottom of the applicable advisory Guideline range.

(c) The government stipulates that the base offense level is 26.

(d) The government agrees to recommend a two-level reduction pursuant to the safety valve provision, if he qualifies for such relief.

5. Elements of the Offense.

(a) In order to establish a Conspiracy to Manufacture, to Distribute and to Possess with the Intent to Distribute Marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846, the government must prove each of the following elements beyond a reasonable doubt.

(i) There was an agreement between two or more persons to manufacture, to distribute and/or to possess with intent to distribute a controlled substance;

(ii) The defendant became a member of this conspiracy knowing of at least one of its criminal objectives and intending to help accomplish it.

(b) In addition, the government is required to prove that the offense involved 100 kilograms or more of a mixture or substance

containing a detectable amount of marijuana or 100 or more marijuana plants regardless of weight.

6. Factual Basis.

The defendant will plead guilty to the sole count of the Indictment, because he is in fact guilty of the essential elements of the crime set forth therein. The defendant also agrees that the following are the facts of this case, although he acknowledges that, as to other facts, the parties may disagree:

> Between on or about August 1, 2010, and continuing to on or about November 6, 2010, in the County of Fresno, within the State and Eastern District of California, Counties of Iron, within the State and District of Utah, Counties of Suffolk and Bristol, within the State and District of Massachusetts, and elsewhere, the defendant and co-defendants PHOUSANGKHY PHANTHADETH, aka "Phou," MANOP SOUKSAVATH, ERNSON MERISIER, aka "E," MARQUIS ALLEN MECA, and RUDDYS A. PIMENTEL did knowingly and intentionally conspire and agree with each other and other persons to manufacture, to distribute, and to possess with the intent to distribute approximately 100 kilograms or more of marijuana.
>
> During that time frame, the government's evidence indicates that law enforcement agents discovered a large marijuana grow site consisting of 1,000 or more marijuana plants growing openly at W. Central and South Valentine Avenues in Fresno County. The grow site purported to contain medicinal marijuana with posted recommendations from two local doctors. During surveillance of the Central and Valentine grow site, agents saw vehicles bearing out of state license plates arrive at and leave the grow site. The occupants retrieved bags, placed them in their vehicles and then traveled to a stash house/processing location rented by the defendant on S. Orange Avenue in Fresno.
>
> Specifically, with respect to SAVONGSY, on September 27, 2010, two pickup trucks, one bearing Tennessee plates registered to the defendant Savongsy at 3904 Veals Road in Murfreesboro, containing marijuana left the Central and Valentine grow site and arrived at the Orange location rented by SAVONGSY.
>
> On October 2, 2010, Savongsy's pickup with Tennessee plates made three trips to the Orange location, where marijuana was unloaded. The next day, the same pickup

arrived at the Orange location and marijuana was transferred from the pickup to inside the residence.

In addition, a minivan bearing Tennessee plates frequented the Central and Valentine cultivation site and marijuana accumulation and distribution site at Orange on many occasions during the investigation. On October 13, 2010, the minivan was located at 3904 Veals Road in Murfreesboro, Tennessee. Not only was this the address of record for Savongsy's pickup but a drug detecting canine alerted to the presence of a controlled substance in both the minivan and the residence at which it was parked.

The day before the minivan was located in Tennessee, on October 12, 2010, surveillance at the Orange accumulation/distribution location established that four to six boxes that appeared to be heavy were loaded into two different SUVS. One of the SUVs with Kansas state plates, a 2007 Armada, arrived at a residence owned by co-defendant PHANTHADETH on Florence Avenue in Fresno, where the occupants unloaded items.

On November 4, 2010, the 2007 Armada, occupied by co-defendants SOUKSAVATH and PHANTHADETH, was intercepted near Cedar City, Utah following a traffic stop. The 2007 Armada contained 184 pounds, or 83 kilograms, of marijuana valued at approximately $500,000, belonging to SAVONGSY. A controlled delivery of the drug to co-defendants MERISIER, PIMENTEL and MECA in Roslindale, Massachusetts was successfully conducted on November 6, 2010.

Following PHANTHADETH's arrest, agents executed a search warrant at PHANTHADETH's residence on Florence Avenue in Fresno. Agents found a small indoor marijuana grow in two upstairs bedrooms, purporting to be medicinal, and some processed marijuana totaling approximately 4.4 kilograms.

Agents also executed a search warrant at another property owned by PHANTHADETH on Jensen Avenue following his arrest. Agents found a large quantity of marijuana plants drying in a barn and about 110 live marijuana plants on the southwest portion of the property, totaling approximately 265.9 kilograms of marijuana, and approximately $35,000 in cash. A medicinal marijuana recommendation in PHANTHADETH's name was also found at this location.

Approximately 353.3 kilograms marijuana is the amount involved in the defendant's relevant conduct encompassed in the sole count of the Indictment which could be readily proven by the government at trial against the defendant.

7. <u>Potential Sentence</u>.

The defendant understands that, in determining his sentence, the Court is required to take into consideration the Federal Sentencing Guidelines adopted by the United States Sentencing Commission. Further, he understands that the Court may give him any reasonable sentence above or below the applicable Guidelines range depending on aggravating or mitigating circumstances in his case. The following is the maximum potential sentence which the defendant faces for his conviction as to Count One:

(a) Imprisonment.

Minimum: Five (5) Years.

Maximum: Forty (45) Years.

(b) Fine.

Maximum: $5,000,000.00.

(c) Fine and/or Imprisonment.

(d) Supervised Release.

Mandatory Minimum: Four (4) years.

Maximum: Life.

(Should the defendant violate the conditions of supervised release, he could be subject to a term of imprisonment up to the term of supervised release imposed or five (5) years, whichever is less.)

(e) Penalty Assessment.

Mandatory: One Hundred Dollars ($100.00).

(f) Potential Immigration Consequences.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is

not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

8. Waiver of Rights.

The defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If the defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be a jury trial or a trial by a judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) At trial, he would have the right to be assisted by an attorney, who would be appointed if necessary.

(c) If the trial were a jury trial, the jury would be composed of twelve lay persons selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other

disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

(d) If the trial were held before a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether he was persuaded of the defendant's guilt beyond a reasonable doubt.

(e) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(f) At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from this refusal to testify.

(g) The defendant understands that by pleading guilty he is waiving all of the rights set forth above and the defendant's attorney has explained those rights to him and the consequences of his waiver of those rights.

9. <u>Questions by Court</u>.

The defendant understands that, if the Court questions him under oath on the record and in the presence of counsel about the offense to which he has pleaded guilty, his answers, if false, may later be used against him in a prosecution for perjury or false statement.

10. Entire Agreement.

The defendant and his attorney acknowledge that no threats, promises or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce the defendant to plead guilty.

11. Court Not a Party.

It is understood by the parties that the sentencing court is neither a party to nor bound by this agreement and the sentencing judge is free to impose the maximum penalties as set forth in paragraph 7.

12. Presentence Report.

The defendant understands that the United States Probation Office is not a party to this agreement and will make an independent investigation of the defendant's activities and his background and prepare a presentence report which it will submit to the court as its own sentencing recommendation. In addition, the Government will fully appraise the Probation Office, as well as the Court, of the full and true nature, scope and extent of the

////

////

////

////

////

defendant's criminal activities concerning the charge to which the defendant is entering a plea of guilty.

DATED: 7/28/11

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

By Karen Escobar
KAREN A. ESCOBAR
Assistant U.S. Attorney

DATED: 7/27/11

BOUNEPHENG SAVONGSY
Defendant

DATED: 7/27/11

YAN SHRAYBERMAN
Attorney for the Defendant

7-27-11

JOHN MOUA - LAO INTERPRETER