BENJAMIN B. WAGNER
United States Attorney
KAREN A. ESCOBAR
Assistant U.S. Attorney
2500 Tulare Street
Fresno, California 93721
Telephone: (559) 497-4000

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) 1:10-CR-0462 LJO |
| Plaintiff, | ) |
| | ) GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT SAVONGSY'S SENTENCING OBJECTIONS |
| v. | ) |
| BOUNEPHENG SAVONGSY, | ) |
| | ) Date: January 23, 2012 |
| Defendant. | ) Time: 1:0 p.m. |
| | ) Ctrm: Four |
| | Honorable Lawrence J. O'Neill |

The United States of America, by and through BENJAMIN B. WAGNER, United States Attorney, and KAREN A. ESCOBAR, Assistant United States Attorney, hereby responds to Defendant Savongsy's objections to the presentence report and submits the following sentencing memorandum.

## I. STATEMENT OF FACTS

This case stems from an investigation initiated by the Fresno County Sheriff's Office and Fresno Methamphetamine Task Force of the Central Valley HIDTA which focused on a large marijuana grow site consisting of over 1,000 marijuana plants growing openly at W. Central and

South Valentine Avenues[1] in Fresno County. The grow site purported to contain medicinal marijuana with posted recommendations from local doctors. During the course of a safety valve interview, Defendant admitted that he helped care for the marijuana plants at Central and Valentine. He also admitted in his plea agreement that he was involved in a marijuana conspiracy involving 100 kilograms or more of marijuana.

During surveillance of the Central and Valentine grow site, agents saw vehicles bearing out of state license plates arrive there. The occupants of the vehicles retrieved bags, placed them in their vehicles and then traveled primarily to a residence rented by Defendant located on Orange Avenue in Fresno, which was later determined to be a “stash” or marijuana processing and distribution location. On September 27, 2010, for example, Fresno County Sheriff detectives saw two pickup trucks, one bearing Tennessee plates registered to Defendant with an address of 3904 Veals Road in Murfreesboro, where Defendant also resided, loaded with bags of what appeared to be and had the odor of marijuana leave the Central and Valentine grow site and arrive at Defendant’s Orange Avenue residence.

On October 2, 2010, a Fresno County Sheriff detective saw Defendant’s pickup with Tennessee plates make three trips to the Orange residence, where large bags, believed to be marijuana, were unloaded. The next day, the same detective saw the same pickup arrive at the Orange residence and unload and transfer eleven large bags into the residence. With a spotting scope, the detective was able to see a green leafy substance, consistent with marijuana, protruding from some of the bags.

In addition, detectives saw a minivan bearing Tennessee plates frequent the Central and Valentine cultivation site and marijuana accumulation and distribution site at Orange on many occasions during the investigation. Indeed, four days after detectives had seen the minivan frequenting these locations, it was located on October 13, 2010, at Defendant’s Tennessee residence – 3904 Veals Road in Murfreesboro, Tennessee. A drug detecting canine alerted to the presence of a

[1]This property is not owned by any of the defendants in this case.

controlled substance in both the minivan and the Murfreesboro residence at which the minivan was parked.

The day before the minivan was located in Tennessee, on October 12, 2010, surveillance at the Orange accumulation/distribution residence established that four to six boxes that appeared to be heavy were loaded into two different SUVS. One of the SUVs with out of state plates, a 2007 Armada, arrived at co-defendant PHOUSANGKHY PHANTHADETH's residence on Florence Avenue in Fresno, where the occupants unloaded items. PHANTHADETH is Defendant's nephew. The 2007 Armada was occupied by PHANTHADETH and co-defendant MANOP SOUKSAVATH and was ultimately intercepted in Utah following a traffic stop and a controlled delivery of 83.63 kilograms or 184 pounds of marijuana it was transporting from the Florence residence to Massachusetts was successfully conducted.

PHANTHADETH, who has pled guilty and been sentenced, not only admitted to growing marijuana at the Florence residence and a residence on Jensen Avenue but said that some of the marijuana from those locations belonged to his uncle, the defendant.

Upon advice and waiver of <u>Miranda</u> rights, SOUKSAVATH indicated that the intercepted load was worth $500,000. According to SOUKSAVATH, PHANTHADETH's uncle, the defendant SAVONGSY, was the owner of the marijuana. SOUKSAVATH also claimed that the Fresno "medicinal" marijuana is superior to the high-THC bud from British Columbia ("BC bud") and that the Fresno marijuana sells for a high price on the East Coast. SOUKSAVATH also admitted to transporting two prior loads to Boston on behalf of the PHANTHADETH/SAVONGSY drug trafficking organization. Those shipments were made to co-defendant ERNSON, aka "E," MERISIER. SOUKSAVATH, MERISIER and the other Boston area co-defendants have all entered guilty pleas and been sentenced by this Court.

In his plea agreement, Defendant readily "admits that 83.63 kilograms of marijuana is attributable to him in connection with the drug conspiracy." Def. Mem. of Plea Agreement at 5:3-4.

The other SUV seen during the October 12, 2010, surveillance went a rural, agricultural area

of Fresno County at California and Indianola, where Fresno County Sheriff Sergeant Gregg Collins saw the two occupants remove boxes from it. The boxes were similar in appearance to those that were loaded into it at Defendant's Orange residence.

The California and Indianola location consists of a 54 acre parcel. In the fall of 2010, the location was the site of a large marijuana cultivation operation bearing "striking similarities" to the grow operation at Central and Valentine, as noted in a search warrant affidavit prepared for a search of the residence at the California and Indianola location. Specifically, both operations were similar in the manner and posting of the purportedly "medicinal" marijuana recommendations, the quality and robustness of the marijuana plants, the quantity of the marijuana plants, and the methodology in the placement of the marijuana plants, i.e., "the aggregation of adjacent marijuana gardens separated and/or sectioned off by an array of fencing," as noted in the search warrant affidavit for California and Indianola.

Ten days after Sergeant Collins' surveillance of California and Indianola, on October 22, detectives saw Defendant's pickup loaded with lumber travel from his Orange marijuana accumulation/distribution location to the residence at California and Indianola where it drove to the rear of the residence and left without the lumber a few minutes later. Defendant admitted during his safety valve interview that he had unloaded lumber there and that he had gone there to inquire about the land.

Following, and as a result of, the arrests of PHANTHADETH, SOUKSAVATH, MERISIER, PIMENTEL and MECA, a federal search warrant was executed at MECA's Roslindale residence, where agents retrieved 30 more pounds of processed marijuana, ammunition, and some ecstasy. Indicia in the name of MECA was also found at that location.

Additional federal search warrants were obtained in Fresno.

A search warrant executed at Defendant's Orange stash/processing location yielded 15.2

kilograms of marijuana and .352 grams of kief[2] or crystals separated from marijuana.

Pursuant to the execution of a search warrant at PHANTHADETH's residence on Florence Avenue in Fresno, agents found a small indoor marijuana grow in two upstairs bedrooms, purporting to be medicinal, and some processed marijuana totaling approximately 4.4 kilograms. Agents also found a loaded .45 caliber Ruger, semi-automatic handgun on the top of an entertainment center in the living room. They also found a .38 caliber two shot Davis Industries Derringer pistol, a .22 caliber semi-automatic pistol, a Norinco semi-automatic 7.62x39 rifle with a detachable 30 round magazine, and a Ruger bolt action .308 rifle fitted with a scope in the upstairs master bedroom walk-closet. Agents also found a digital scale and pay-owe sheets in the garage.

Agents also executed a search warrant at another property owned PHANTHADETH on Jensen Avenue. Agents found a large quantity of marijuana plants drying in a barn and about 110 live marijuana plants on the southwest portion of the property, totaling approximately 265.9 kilograms of marijuana, and approximately $35,000 in cash. A medicinal marijuana recommendation in PHANTHADETH's name was also found at this location.

The total amount of marijuana seized as a result of this and the related investigation of California and Indianoloa was approximately 1,189 kilograms. To date, agents have also seized and forfeited approximately $113,151 in cash, eleven firearms, and one vehicle.

After Defendant was indicted in this case, he was arrested following a traffic stop in Arizona. Marijuana residue was found in the Toyota pickup that he occupied with his girlfriend. The pickup also had Tennessee license plates and was headed east on I-40. P.S.R. 6-7.

## II. AGREEMENTS

Pursuant to the terms of the plea agreement in this matter, the defendant agreed to plead to count one of the Indictment charging Conspiracy to Manufacture, to Distribute, and to Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. With respect to drug

---

[2]The probation officer referred to "keefe" in the presentence report at page 6, paragraph 13. The word should be amended to reflect the correct spelling of the word, "kief."

quantity, he admitted only that the drug quantity attributable to him was 83.63 kilograms of marijuana. He further agreed not to contest the forfeiture of any assets seized in this matter and agreed to waive his right to appeal and collaterally attack his conviction and sentence.

The government, in exchange, agreed to recommend a three-level reduction for acceptance of responsibility and agreed to recommend a two-level reduction, if he qualified for safety valve relief.

The government did not agree, contrary to Defendant's representation, that the drug quantity that "he would be held liable for and [that was] readily provable was only 83 kilos." Def. Mem. of Formal Objections to the Presentence Report at 1:25-26.

The government indicated that, while he admitted only to 83.63 kilograms, additional marijuana was attributable to him. Specifically, in its plea offer, the government stated with respect to drug quantity:

> The government would agree to the following sentencing calculation for purposes of plea only. The government is willing to agree that the defendant's sentence should be based upon a total drug quantity of 353.3 kilograms of marijuana, which provides for a base offense level of 26. The drug quantity is derived from the Boston shipment (83 kilograms), Florence seizure (4.4 kilograms), and Jensen seizure (265.9 kilograms). The drug quantity does not include prior shipments to Boston, which would have bumped the BOL up to at least 28. The government would also agree to recommend a 3 level reduction for acceptance of responsibility, a two level reduction pursuant to the safety valve provision, if he qualifies, and a low end guideline sentence. Assuming a CHC I and safety valve applicability, the resulting guideline range would be 37 to 46.

Although Defendant did not admit that 353.3 kilograms of marijuana is attributable to him, this Court may so find based on relevant conduct, pursuant to U.S.S.G. § 1B1.3.

83 kilograms of marijuana, the amount to which Defendant admitted, triggers a base offense level of 24.

## III. USPO SENTENCING RECOMMENDATION

The probation officer found that Defendant's guideline range is 46 to 57 months and, after considering all Section 3553(a) factors, recommended a sentence of 46 months. P.S.R. 19. This guideline range was derived from a BOL 26, pursuant to U.S.S.G. § 2D1.1(c)(7), "since the total amount is at least 100 kilograms, but less than 400 kilograms of marijuana." P.S.R. 8. The drug quantity determination was "based on a review of the discovery and information received from the Government." Id.

The probation officer further recommends a 3 level reduction for acceptance of responsibility. P.S.R. 10. At the time of the drafting of the presentence report, Defendant had not satisfied the requirements for safety valve eligibility. P.S.R. 9.

Defendant has no criminal history. P.S.R. 11.

. IV. GOVERNMENT'S SENTENCING RECOMMENDATION

Notwithstanding the fact that Defendant does not acknowledge the entire drug quantity attributable to him, Defendant has otherwise satisfied the criteria for safety valve relief. Therefore, the total offense level is 21 and the applicable guidelines range is 37 to 46 months.

The government recommends a sentence of 37 months.

V. DEFENDANT’S SENTENCING RECOMMENDATION

Defendant recommends a sentence of 23 months based on his alleged mitigating role and alleged sentencing disparity, noting that SOUKSAVATH received a 23 month sentence.

VI. A 37 MONTH SENTENCE IS REASONABLE

**A. Defendant Is Not Entitled to Mitigating Role**

Defendant has objected to the probation officer’s recommendation that he not receive a mitigating role adjustment. The government concurs with the findings of the probation officer. *See* USPO Response to Defendant’s Formal Objections at 2.

“The defendant has the burden of proving by a preponderance of the evidence that he is entitled to a downward adjustment based on his role in the offense.” United States v. Ladum, 141 F.3d 1328, 1348 (9th Cir. 1998).

Under Application Note 4 of U.S.S.G. § 3B1.2, a minimal participant is described as one who has a lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others. Application Note 5 describes a minor participant as one who is less culpable than most other participants, but whose role could not be described as minimal

In this case, Defendant has received a significant benefit in terms of the government’s agreement to attribute only 353.3 kilograms of marijuana to him derived from the most recent Boston shipment (83.63 kilograms), Florence seizure (4.4 kilograms), and Jensen seizure

(265.9 kilograms). As noted above, the Florence residence was Defendant's nephew, co-defendant PHANTHADETH resided, and was the last California launching point of the Armada from which the 83.63 kilograms of marijuana was seized. Further, as discussed above, before the Armada arrived at the Florence residence, it was loaded with four to six boxes at Defendant's residence, the Orange marijuana processing/distribution stash house. The observations of surveillance agents is consistent with PHANTHADETH's statements that the 83.63 kilograms of marijuana belonged to SAVONGSY, as well as PHANTHADETH's statements that marijuana was grown at both the Florence and Jensen residences, which he owned, and that the marijuana at those locations belonged to both SAVONGSY and himself, as discussed above.

The drug quantity attributable to Defendant by the government is conservative. Based on Defendant's own admissions, he was clearly involved with the Central and Valentine location, which consisted of over 1,000 marijuana plants.[3] Nor is Defendant being held accountable for the entire drug quantity involved in the larger drug conspiracy. In addition to the Central and Valentine marijuana, SOUKSAVATH indicated that he had made at least two other shipments to MERISIER in Boston involving a total of 1,080 pounds or 490.90 kilograms of marijuana. Defendant also rented a Derrell's Mini-Storage storage unit where another 86.3 kilograms of marijuana was found. In sum, the evidence indicates that the conspiracy involved 1,046.68 kilograms of marijuana – based on the Boston shipments and seizures from Orange, Florence, Jensen and the Derrell's Mini-Storage. A drug quantity of 1,046.68 kilograms triggers a base offense level of 32 and a guideline range of 121 to 151 months, applying a Criminal History Category of I.

If Defendant was held responsible for the entire drug quantity, perhaps a mitigating role might be appropriate if it could be established that someone else higher than PHANTHADETH or SAVONGSY was in charge of this large-scale marijuana cultivation/distribution organization. However, the government has no information that anyone had a command position higher than

---

[3]Had the government required Defendant to admit to that over 1,000 marijuana plants was attributable to him, he would have faced a mandatory minimum prison term of 10 years. Instead, the government agreed to drop the drug quantity allegation pursuant to 21 U.S.C. § 841(b)(1)(A), as charged in the conspiracy count to which he pled guilty.

Defendant or his nephew. In light of the evidence and information known to the government, a mitigating role is unsupported. Indeed, a strong argument could be made that Defendant was the leader and should be given a leadership enhancement. The government did not make any agreement regarding Defendant's role in the offense. However, assuming the Court is inclined to impose a sentence of 37 months - and no less - the government will not seek an upward role adjustment.[4]

**B. Drug Quantity**

Based on the foregoing, the drug quantity reasonable foreseeable to and attributable to Defendant as a result of his involvement in the conspiracy exceeded 83.63 kilograms, the marijuana associated with the last Boston shipment.

As discussed above, the drug quantity alluded to in the government's plea offer - 353.3 kilograms of marijuana - is conservative but reasonable. Defendant has acknowledged in pleading guilty and in the context of the safety valve interview that he was involved in the Central and Valentine cultivation operation. The government is not holding him accountable for that quantity. Rather, it is holding him accountable for marijuana that was directly under his control – marijuana that was taken from the grow site to his residence on Orange and his nephew's residence on Florence and marijuana actually seized from Orange, Florence, and Jensen, which his nephew indicated also belonged to Defendant.

Accordingly, since 353.3 is at least 100 kilograms but less than 400 kilograms of marijuana a base offense level of 26 is proper.

**C. A Sentence of 37 Months is Reasonable.**

A sentence of 37 months is a reasonable sentence necessary to ensure just punishment and serve as an effective deterrent.

Defendant's argument that he should receive a sentence commensurate with SOUKSAVATH, who was sentenced to 23 months, is flawed. SOUKSAVATH's sentence was justified as set forth in sealed filings with the Court. Although this defendant does not have access

---

[4]Applying a four-level leadership enhancement based on a drug quantity of 1,046.68 kilograms of marijuana, Defendant would have faced a 188 to 235 month guideline range.

to those documents, it is clear that SOUKSAVATH would not have been involved in the conspiracy as a transporter of marijuana had this defendant not hired him to transport the marijuana that he and his nephew grew, processed, concealed, and distributed.

Given the government's liberal recommendation for safety valve relief,[5] the sentences imposed on the co-defendants,[6] and the fact that the government has conceded that 353.3 kilograms of marijuana is reasonably attributable to Defendant, rather than the greater quantity associated with the Central and Valentine grow and attributable to the entire conspiracy (at least 1,046.8 kilograms), a sentence of 37 months is more than reasonable.

## V. CONCLUSION

Based on the foregoing, it is respectfully requested that the Court sentence Defendant to 37 months in custody.

Dated: January 20, 2012

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

By /s/ Karen A. Escobar
KAREN A. ESCOBAR
Assistant U.S. Attorney

---

[5]Defendant is not acknowledging the entire drug quantity reasonably attributable to him.

[6]PHANTHADETH was sentenced to 60 months in custody, MERISIER and PIMENTEL were sentenced to 30 months in custody, MECA was sentenced to 24 months in custody. C.R. 143, 160-62.